UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

FLOYD PERRYMAN,

               Plaintiff,

    v.

JASDEEP BAL, M.D.,

               Defendant.

No.  2:14-cv-0680-WBS-EFB P

FINDINGS AND RECOMMENDATIONS

Plaintiff is a state prisoner proceeding without counsel in an action brought under 42 U.S.C. § 1983.  He alleges that defendant violated his rights by exhibiting deliberate indifference toward his serious medical needs.  ECF No. 1. Now pending before the court is defendant's motion for summary judgment.  ECF No. 32.  For the reasons that follow, the court finds that defendant is entitled to summary judgment and recommends that the motion be granted.

I.      **Plaintiff's Complaint**

Plaintiff was incarcerated at the California State Prison – Sacramento (hereinafter "CSP-SAC") when he sustained an injury to his thumb during a prison riot on May 20, 2011.  ECF No. 1 at 3.  He was transported to San Joaquin General Hospital (hereinafter "SJGH") where he claims that, after an examination, a physician – identified elsewhere in the record as Dr. Dowbak – recommended that he be returned to the hospital within a week for surgery.  ECF No. 1 at 4; ECF No. 32-4 at 16.  After being returned to prison, plaintiff made repeated verbal complaints to medical staff about the pain his injury was causing him. ECF No. 1 at 4.  On May 25, 2011, he

1

1   alleges that Dr. Andrew Nangalama, a CSP-SAC physician, also recommended that he be taken to

2   SJGH for thumb surgery. *Id.*  He contends, however, that defendant – who held the position of

3   Chief Physician Executive[1] at CSP-SAC – declined to follow Dowbak and Nangalama's

4   recommendations despite never having examined plaintiff himself. *Id.*

5          Curiously, defendant has also addressed five other medical claims in his Memorandum of

6   Points and Authorities which are not included in plaintiff's complaint. ECF No. 32-1 at 15-17.

7   These are: (1) that defendant denied a February 2012 request for plaintiff to be seen by the SJGH

8   orthopedic department; (2) that defendant denied a March 9, 2012 request to refer plaintiff for an

9   orthopedic consult at SJGH; (3) that defendant denied a July 11, 2012 request for an MRI on

10  plaintiff's thumb; and (4-5) that defendant denied requests for orthopedic consultations on June 3,

11  2013 and July 23, 2013. *Id.*  Plaintiff's complaint only implicates defendant's failure to approve

12  thumb surgery in May of 2011, and this was the only allegation which the court considered at the

13  screening stage. ECF No. 1 at 3-4; ECF No. 6 at 1.  Accordingly, these additional claims need

14  not be addressed.

15  **II.     Legal Standards**

16          **A.  Summary Judgment Standard**

17          Summary judgment is appropriate when there is "no genuine dispute as to any material

18  fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Summary

19  judgment avoids unnecessary trials in cases in which the parties do not dispute the facts relevant

20  to the determination of the issues in the case, or in which there is insufficient evidence for a jury

21  to determine those facts in favor of the nonmovant. *Crawford-El v. Britton*, 523 U.S. 574, 600

22  (1998); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50 (1986); *Nw. Motorcycle Ass'n v.

23  U.S. Dep't of Agric.*, 18 F.3d 1468, 1471-72 (9th Cir. 1994).  At bottom, a summary judgment

24  motion asks whether the evidence presents a sufficient disagreement to require submission to a

25  jury.

26  /////

27  _____

28  [1] Plaintiff's complaint refers to defendant's position with the acronym "CMO." ECF No. 1
    at 4.  Defendant has since clarified the title of his position.  ECF No. 32-2 ¶ 2.

1    The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims
2    or defenses.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  Thus, the rule functions to
3    "'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for
4    trial.'"  *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)  (quoting Fed. R.
5    Civ. P. 56(e) advisory committee's note on 1963 amendments).  Procedurally, under summary
6    judgment practice, the moving party bears the initial responsibility of presenting the basis for its
7    motion and identifying those portions of the record, together with affidavits, if any, that it
8    believes demonstrate the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323;
9    *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).  If the moving party meets
10   its burden with a properly supported motion, the burden then shifts to the opposing party to
11   present specific facts that show there is a genuine issue for trial.  Fed. R. Civ. P. 56(e); *Anderson*,
12   477 U.S. at 248; *Auvil v. CBS "60 Minutes"*, 67 F.3d 816, 819 (9th Cir. 1995).

13   A clear focus on where the burden of proof lies as to the factual issue in question is crucial
14   to summary judgment procedures.  Depending on which party bears that burden, the party seeking
15   summary judgment does not necessarily need to submit any evidence of its own.  When the
16   opposing party would have the burden of proof on a dispositive issue at trial, the moving party
17   need not produce evidence which negates the opponent's claim.  *See, e.g., Lujan v. National*
18   *Wildlife Fed'n*, 497 U.S. 871, 885 (1990).  Rather, the moving party need only point to matters
19   which demonstrate the absence of a genuine material factual issue.  *See Celotex*, 477 U.S. at 323-
20   24 ("[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a
21   summary judgment motion may properly be made in reliance solely on the 'pleadings,
22   depositions, answers to interrogatories, and admissions on file.'").  Indeed, summary judgment
23   should be entered, after adequate time for discovery and upon motion, against a party who fails to
24   make a showing sufficient to establish the existence of an element essential to that party's case,
25   and on which that party will bear the burden of proof at trial.  *See id.* at 322.  In such a
26   circumstance, summary judgment must be granted, "so long as whatever is before the district
27   court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is
28   satisfied."  *Id.* at 323.

1    To defeat summary judgment the opposing party must establish a genuine dispute as to a

2    material issue of fact.  This entails two requirements.  First, the dispute must be over a fact(s) that

3    is material, i.e., one that makes a difference in the outcome of the case.  *Anderson*, 477 U.S. at

4    248 ("Only disputes over facts that might affect the outcome of the suit under the governing law

5    will properly preclude the entry of summary judgment.").  Whether a factual dispute is material is

6    determined by the substantive law applicable for the claim in question.  *Id.*  If the opposing party

7    is unable to produce evidence sufficient to establish a required element of its claim that party fails

8    in opposing summary judgment.  "[A] complete failure of proof concerning an essential element

9    of the nonmoving party's case necessarily renders all other facts immaterial."  *Celotex*, 477 U.S.

10   at 322.

11    Second, the dispute must be genuine.  In determining whether a factual dispute is genuine

12   the court must again focus on which party bears the burden of proof on the factual issue in

13   question.  Where the party opposing summary judgment would bear the burden of proof at trial on

14   the factual issue in dispute, that party must produce evidence sufficient to establish its factual

15   claim.  Conclusory allegations, unsupported by evidence are insufficient to defeat the motion.

16   *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Rather, the opposing party must, by affidavit

17   or as otherwise provided by Rule 56, designate specific facts that show there is a genuine issue

18   for trial.  *Anderson*, 477 U.S. at 249; *Devereaux*, 263 F.3d at 1076.  More significantly, to

19   demonstrate a genuine factual dispute the evidence relied on by the opposing party must be such

20   that a fair-minded jury "could return a verdict for [him] on the evidence presented."  *Anderson*,

21   477 U.S. at 248, 252.  Absent any such evidence there simply is no reason for trial.

22    The court does not determine witness credibility.  It believes the opposing party's

23   evidence, and draws inferences most favorably for the opposing party.  *See id.* at 249, 255;

24   *Matsushita*, 475 U.S. at 587.  Inferences, however, are not drawn out of "thin air," and the

25   proponent must adduce evidence of a factual predicate from which to draw inferences.  *American*

26   *Int'l Group, Inc. v. American Int'l Bank*, 926 F.2d 829, 836 (9th Cir. 1991) (Kozinski, J.,

27   dissenting) (citing *Celotex*, 477 U.S. at 322).  If reasonable minds could differ on material facts at

28   issue, summary judgment is inappropriate.  *See Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th

4

1   Cir. 1995).  On the other hand, the opposing party "must do more than simply show that there is

2   some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could

3   not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for

4   trial.'"  *Matsushita*, 475 U.S. at 587 (citation omitted).  In that case, the court must grant

5   summary judgment.

6         Concurrent with his motion for summary judgment, defendant advised plaintiff of the

7   requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.

8   ECF No. 32 at 3-4; *see Woods v. Carey*, 684 F.3d 934 (9th Cir. 2012); *Rand v. Rowland*, 154 F.3d

9   952, 957 (9th Cir. 1998) (en banc), *cert. denied*, 527 U.S. 1035 (1999); *Klingele v. Eikenberry*,

10  849 F.2d 409 (9th Cir. 1988).

11      **B.  Eighth Amendment Standards**

12        To succeed on an Eighth Amendment claim predicated on the denial of medical care, a

13  plaintiff must establish that he had a serious medical need and that the defendant's response to

14  that need was deliberately indifferent.  *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006); *see*

15  *also Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  A serious medical need exists if the failure to

16  treat the condition could result in further significant injury or the unnecessary and wanton

17  infliction of pain.  *Jett*, 439 F.3d at 1096.  Deliberate indifference may be shown by the denial,

18  delay, or intentional interference with medical treatment, or by the way in which medical care is

19  provided.  *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988).

20        To act with deliberate indifference, a prison official must both be aware of facts from

21  which the inference could be drawn that a substantial risk of serious harm exists, and he must also

22  draw the inference.  *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  Thus, a defendant is liable if

23  he knows that plaintiff faces "a substantial risk of serious harm and disregards that risk by failing

24  to take reasonable measures to abate it."  *Id.* at 847.  A physician need not fail to treat an inmate

25  altogether in order to violate that inmate's Eighth Amendment rights.  *Ortiz v. City of Imperial*,

26  884 F.2d 1312, 1314 (9th Cir. 1989).  A failure to competently treat a serious medical condition,

27  even if some treatment is prescribed, may constitute deliberate indifference in a particular case.

28  *Id.*

1    It is important to differentiate common law negligence claims of malpractice from claims

2    predicated on violations of the Eighth Amendment's prohibition of cruel and unusual punishment.

3    In asserting the latter, "[m]ere 'indifference,' 'negligence,' or 'medical malpractice' will not

4    support this cause of action." *Broughton v. Cutter Laboratories*, 622 F.2d 458, 460 (9th Cir.

5    1980) (citing *Estelle*, 429 U.S. at 105-06); *see also Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th

6    Cir. 2004).  Plaintiff must show a deliberate disregard for a known medical need.  The Ninth

7    Circuit has made clear that a difference of medical opinion is, as a matter of law, insufficient to

8    establish deliberate indifference.  *See Toguchi*, 391 F.3d at 1058.  "Rather, to prevail on a claim

9    involving choices between alternative courses of treatment, a prisoner must show that the chosen

10   course of treatment 'was medically unacceptable under the circumstances,' and was chosen 'in

11   conscious disregard of an excessive risk to [the prisoner's] health.'"  *Id.* (quoting *Jackson v.*

12   *McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)).

13   Finally, a supervisory official may be held liable for deliberate indifference "if there exists

14   either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient

15   causal connection between the supervisor's wrongful conduct and the constitutional violation."

16   *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989). "[A] plaintiff must show the supervisor

17   breached a duty to plaintiff which was the proximate cause of the injury.  The law clearly allows

18   actions against supervisors under section 1983 as long as a sufficient causal connection is present

19   and the plaintiff was deprived under color of law of a federally secured right." *Redman v. County*

20   *of San Diego*, 942 F.2d 1435, 1447 (9th Cir. 1991) (internal quotations omitted). Section 1983

21   does not, however, provide for liability under a theory of *respondeat superior*.  *Taylor v. List*,

22   880 F.2d 1040, 1045 (9th Cir. 1989). That is, a supervisor may not be held vicariously liable for

23   the misconduct of his or her subordinates.

24   **III.    Analysis**

25   Defendant states, by way of sworn affidavit, that he was not responsible for scheduling

26   inmate appointments, ensuring that the recommendations of outside physicians were followed, or

27   for approving requests to transport inmates to outside medical appointments.  Bal Decl., ECF No.

28   32-2 ¶ 2.  He also states that he was not personally responsible for providing medical care to

1    inmates and that he has no recollection of the plaintiff.[2]  *Id*. ¶¶ 2-4.  Plaintiff offers no evidence to

2    refute that testimony.  He simply argues that defendant, as Chief Physician Executive, was

3    responsible "through a chain of command" for ensuring that he was transported to SJGH for

4    surgery.  ECF No. 56 at 4.  More specifically, he contends that defendant approved or denied all

5    decisions made by the Chief Physician and Surgeon.  *Id*.  This is insufficient to establish

6    deliberate indifference.  General allegations about a defendant's position in the chain of command

7    amount to little more than an alternate method of invoking vicarious liability.  Here, defendant's

8    direct authority over the Chief Physician and Surgeon is irrelevant, as plaintiff has not alleged any

9    misconduct against that official.  In fact, plaintiff has not identified any CSP-SAC medical

10   personnel in the "chain of command" – other than the defendant himself – who allegedly failed to

11   provide him with adequate care.  The only other member of the CSP-SAC medical staff

12   mentioned in the complaint is Dr. Nangalama, and he allegedly agreed with Dr. Dowbak's

13   assessment that surgery was necessary.  ECF No. 1 at 4.  Most fatal to plaintiff's claim is his own

14   deposition testimony, wherein he states that he has no evidence which establishes that defendant

15   actually knew about his injury prior to the filing of this suit.  ECF No. 32-4 at 30.  He argues only

16   that defendant should have known.  *Id*. at 18.  Whether a defendant should have recognized a risk

17   to an inmate's health is immaterial.  Constructive notice simply does not apply.  The only relevant

18   question is whether he had actual awareness of the risk.  *See Gibson v. County of Washoe*, 290

19   F.3d 1175, 1188 (9th Cir. 2002).  While "[a] risk can be so obvious that a jury may reasonably

20   infer actual knowledge on the part of the defendants," *Hall v. Bennett*, 379 F.3d 462, 464 (7th Cir.

21   2004); *see also Farmer v. Brennan*, 511 U.S. 825, 842–43 (1994), plaintiff presents no evidence

22   of such an obvious risk here that would permit a jury to reasonably find actual knowledge.

23          Further, the record establishes the adequacy of plaintiff's medical care in May of 2011.

24   Defendant correctly notes that Dr. Dowbak did not recommend that surgery be performed within

25   a week of May 20, 2011.  Instead, he recommended that CSP-SAC medical staff call SJGH

26

27          [2] In his initial declaration, defendant stated that he had no recollection of "Plaintiff Jamaal
     Duncan."  ECF No. 32-2 ¶ 4.  He has since clarified that he intended this section to refer to the
28   plaintiff in this case.  ECF. No. 59-3 ¶¶ 1-2.

1   within a week to schedule the procedure.  ECF No. 32-4 at 37.  On May 25, 2011, five days after

2   plaintiff's initial visit to SJGH, Dr. Nangalama submitted a request to transport plaintiff back to

3   SJGH for orthopedic services.  *Id*. at 82.  This request was approved[3] and, although it does not

4   appear that surgery was ever undertaken, plaintiff's thumb injury healed to the satisfaction of his

5   medical providers.  *Id*. at 46.  On July 14, 2011, Dr. Dowbak opined that there was no swelling or

6   deformity of the thumb and that the joint was in an "excellent position."  *Id*.  He went on to

7   recommend that plaintiff resume normal activities.  *Id*.  For his part, plaintiff disputes the

8   accuracy of Dr. Dowbak's findings and notes that he never stopped complaining about pain and

9   abnormality in the digit.  ECF No. 56 at 12.  He also contends that defendant's failure to ensure

10  that surgery was timely performed caused his hand to heal abnormally.  *Id*. at 23.  While plaintiff

11  can testify to his subjective complaints, his opinions as to the proper medical procedures and

12  whether the hand healed abnormally are those of a layman.  He has not presented any medical

13  evidence which either contradicts the July 2011 findings or establishes that the failure to schedule

14  surgery in May of 2011 actually harmed him.[4]

15      Having determined that defendant is entitled to summary judgment on the merits, the

16  court will not reach his qualified immunity arguments.

17  **IV.    Recommendation**

18      For the reasons stated above, it is hereby RECOMMENDED that defendant's motion for

19  summary judgment (ECF No. 32) be granted and that the Clerk be directed to enter judgment

20  accordingly and close this case.

21      These findings and recommendations are submitted to the United States District Judge

22  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

23

24          [3] Plaintiff disputes that this request was approved insofar as he did not actually receive
    any treatment until June 11, 2011.  ECF No. 56 at 11. Defendant has not stipulated that the date of
25  approval and the date he was transported back to SJGH were concurrent, however.  Regardless,
    this dispute is not germane to the resolution of defendant's motion.
26

27          [4] Plaintiff was found to have degenerative joint disease in his thumb in July of 2013.  ECF
    No. 32-4 at 77.  Nothing in the medical records suggests that this joint disease was caused or
28  exacerbated by the failure to schedule surgery in May of 2011.

8

after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED:  July 26, 2016.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE